**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wake Up and Ball LLC,<br><br>            Plaintiff,<br><br>v.<br><br> Sony Music Entertainment Incorporated, et al.,<br><br>            Defendants. | No. CV-14-02403-PHX-DGC<br><br>**ORDER** |

Defendant Sony Music Entertainment ("Sony") has filed a motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. Doc. 35. Defendants Deepfreeze Entertainment, LLC ("Deepfreeze") and Robert Carr have also filed a motion to dismiss for failure to state a claim. Doc. 51. The motions are fully briefed. The Court will deny the motions, but allow jurisdictional discovery so that the personal jurisdiction issues may be addressed in a more complete factual context.[1]

**I.    Background.**

Plaintiff Wake Up and Ball, LLC ("Wake Up") is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona. Doc. 25, ¶ 1. Wake Up's business model is based on the discovery, production, and distribution of hip-hop musicians and sound recordings. *Id.*, ¶ 17. Alonzo Harris and Kareem Rogers

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

formed Wake Up on December 9, 2013. *Id.*, ¶¶ 16, 31. Felipe Delgado was a former principal member of Wake Up, but left in October 2014. *Id.*, ¶ 16.

According to Wake Up, Delgado approached hip-hop artist Robert Carr (a.k.a. "Judge da Boss") after Carr recorded the composition "Judge da Boss, Hell Yeah" in October 2013. *Id.*, ¶¶ 18, 20. Delgado allegedly discussed with Carr the possibility of Wake Up financing a music video for the *Hell Yeah* composition. *Id.*, ¶ 20. Wake Up alleges that Carr "verbally indicated" that he would sign a recording contract if Wake Up financed the production of the music video. *Id.*, ¶ 27. Harris and Delgado then met with music video producer Irin Daniels, whom Harris subsequently hired to produce the *Hell Yeah* video. *Id.*, ¶¶ 21-24. Harris provided Daniels with $4,000, and video production began on January 4, 2014. *Id.*, ¶¶ 25, 32. On February 16, 2014, Daniels finished production of the video. *Id.*, ¶ 35. Wake Up alleges that Daniels maintained complete creative control of the video, a fact Carr understood and never disputed. *Id.*, ¶¶ 28, 29, 39-44. In April 2014, Daniels assigned his copyright in the video to Wake Up. *Id.*, ¶ 50.

Wake Up claims that on February 7, 2014, Harris had his attorney draft a recording contract for Carr to sign, and that throughout February and March the two parties exchanged several drafts and met many times. *Id.*, ¶¶ 45, 46. During the negotiations, Harris expressed his desire to own both the lyrics and beat to the *Hell Yeah* composition, and Carr verbally indicated that he owned the rights to the lyrics and beat and was free to sign a recording contract with Wake Up. *Id.*, ¶¶ 47, 48. In March, Harris learned that Marshae Green had obtained the rights to the lyrics and beat of the *Hell Yeah* composition. *Id.*, ¶ 49. Green later notified Wake Up that Carr had signed with Defendant Deepfreeze, an Arizona company with its principal place of business in Glendale, as his managing company. *Id.*, ¶¶ 3, 53. Deepfreeze expressed its desire to purchase rights to the *Hell Yeah* video from Wake Up, and the two parties negotiated over the sale price but did not reach an agreement. *Id.*, ¶¶ 54-56.

On May 8, 2014, Harris learned that Carr had signed with Defendant Sony, a Delaware corporation with its principal place of business in New York. *Id.*, ¶¶ 2, 59. On

August 9, the *Hell Yeah* video was published on YouTube, apparently by Delgado on behalf of Wake Up. *Id.*, ¶ 62. Wake Up claims that Sony caused the video to be removed from YouTube the same day. *Id.*, ¶ 63. Wake Up further claims that on September 21, 2014, Sony published the video on several websites and online services, including MTV and iTunes. *Id.*, ¶ 64. Wake Up applied for and obtained a copyright registration for the *Hell Yeah* video effective September 29, 2014. *Id.*, ¶ 68. It claims that it provided notice to Sony of its infringement of Wake Up's copyright, but that Sony disregarded the notification. *Id.*, ¶¶ 14, 15. The video has remained publically available ever since. *Id.*, ¶ 64.

Wake Up filed suit against Sony, Deepfreeze, and Robert Carr. Wake Up seeks relief for copyright infringement against Sony and Deepfreeze, and seeks declaratory judgment as to its copyright ownership. Additionally, Wake Up has pled a claim for fraud and misrepresentation against Carr. *Id.*, ¶¶ 80-88.

**II.     Sony's Motion to Dismiss.**

      **A.     Personal Jurisdiction.**

            **1.     Legal Standard.**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Arizona has authorized its courts to exercise jurisdiction to the maximum extent permitted by the Due Process Clause of the Constitution. *See* Ariz. R. Civ. P. 4.2(a). Under the Due Process Clause, a federal district court may exercise jurisdiction over a person who is not physically present within the territorial jurisdiction of the court. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The nonresident generally must have certain minimum contacts with the forum so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In this circuit, specific jurisdiction exists only if: (1) the defendant purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directed conduct at the forum that

had effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice – in other words, it is reasonable. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741-42 (9th Cir. 2013). In tort cases, the inquiry under the first part is whether a defendant purposefully directed his activities at the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). This requirement, sometimes referred to as the "effects test," "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783 (1984))).

The effects test does not "'stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.'" *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). Nor does the effects test mean that specific jurisdiction may be based solely on a defendant's knowledge that the subject of his tortious activity resides in a particular state. *See Walden*, 134 S. Ct. at 1125. The Court must always focus on the "'relationship among the defendant, the forum, and the litigation' [which] is the essential foundation of in personam jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the

defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "[When] the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc*, 557 F.2d 1280, 1285 (9th Cir. 1977). Discovery may be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* at 1285, n.1.

### 2. Analysis.

Wake Up must first show that Sony purposefully directed its infringing activity at Arizona. To do so, Wake Up must show that Sony committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803. Sony does not dispute that the first requirement is satisfied – Sony acted intentionally when it published the *Hell Yeah* music video on a number of publically available websites. Doc. 35 at 14, 15. The Court will address the other two requirements.

#### a. Express Aiming.

Wake Up must make a prima facie showing that Sony expressly aimed the publishing of the music video at Arizona. This requires "'something more' than mere foreseeability." *Schwarzenegger,* 374 F.3d at 805. The Ninth Circuit considers a number of factors, including the "interactivity of the defendant's website," "the geographic scope of the defendant's commercial ambitions," and "whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix*, 647 F.3d at 1229.

Wake Up argues that several facts show something more than mere foreseeability. Wake Up alleges that "Sony intentionally uploaded and published Wake Up's copyrighted work to various online and worldwide websites available within the state of

Arizona with the intent that the work be viewed by third parties, including Arizona residents." Doc. 25, ¶ 10. Wake Up explains that its copyright claim arises directly from Sony's publishing of Wake Up's copyrighted video to publically accessible websites available in Arizona. *Id.*, ¶ 11. Wake Up further alleges that Sony, through its dealings and negotiations with Arizona residents Deepfreeze and Carr, and by obtaining copies of Wake Up's copyrighted work and publishing it on worldwide websites available in Arizona, knew or should have known that its actions would harm Arizona residents. *Id.*, ¶ 13. Wake Up also argues that "Sony negotiated with an Arizona company for the recording services of an Arizona artist . . . , [acquiring] possession of the [music video] and purportedly the right to exploit it." Doc. 54 at 13. Wake Up further argues that Sony published the video in Arizona and "promoted its artist in Arizona, in a manner targeted at Arizona" in order to reach Arizona consumers. *Id.*

Alonzo Harris, a member of Wake Up, states in his declaration that the "agreement between Carr, Deepfreeze and Sony required Sony to market and promote Carr." Doc. 54-1, ¶ 18. Harris was aware of a number of Arizona performances by Carr after he signed with Sony including a *Hell Yeah* music video release party where the music video was allegedly shown and an "'Arizona Take Over Tour' promoted by Sony's 'Louder than Life' brand." *Id.* Wake Up has provided a number of exhibits that document these and other Phoenix-area "Judge da Boss" events. Doc. 54-1.

Deepfreeze, Carr, and Sony also entered into an April 20, 2014 "Recording Agreement." Doc. 35-3. Section 9, titled "Brand Equity," requires Carr to pay Sony a certain percentage of all gross revenues in connection with certain activities, including "touring and other live performance engagements" and "the use of [Carr's] name, likeness and/or logos on websites[.]" *Id.* at 6. An August 25, 2014 amendment to the agreement identifies the *Hell Yeah* music video as "Existing Materials" and requires Sony to pay Deepfreeze a "video advance" as "reimbursement for costs incurred by [Deepfreeze] in connection with the Existing Materials." *Id.* at 15. The amendment requires the *Hell Yeah* music video to be characterized as "works made for hire" for

Sony, *id.*, which, according to the recording agreement, would grant Sony ownership of the music video in perpetuity and would give it the exclusive right to use and exploit the music video in any format and by any method, *see id.* at 2-3. The recording agreement and its amendment indicate that Sony has a vested contractual interest in both Carr's live performance engagements and in exploitation of the *Hell Yeah* music video.

Standing alone, the fact that Sony negotiated with an Arizona company regarding an Arizona-based artist would not be enough to establish express aiming at Arizona under post-*Walden* minimum contacts analysis. *See Burger King Corp. v. Rudzewicz¸* 471 U.S. 462, 478 (1985) (holding that a contract with an out-of-state party cannot alone establish sufficient minimum contacts in that party's home forum). Nor would the fact that Sony placed the *Hell Yeah* video on publically available websites accessible in Arizona be sufficient. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) ("[M]aintenance of a passive website alone cannot satisfy the express aiming prong").[2] But if Sony promoted a *Hell Yeah* music video release party in Arizona at which Wake Up's music video was shown, Sony expressly aimed its copyright infringement at Arizona. Moreover, promotion of live performances in Arizona would tend to show the "something more" required for express aiming under the *Calder* effects test, especially when Sony is entitled to a percentage of Carr's revenue from live performances.[3]

---

[2] In *Mavrix*, the Ninth Circuit applied a purposeful direction analysis to the contacts that a celebrity website established with the state of California when it published copyrighted celebrity photos. 647 F.3d at 1228-1232. In finding sufficient contacts for personal jurisdiction, the circuit found "most salient" the fact that the website featured advertisements that directly targeted Californians. *Id.* at 1230. Here, the publication of the *Hell Yeah* music video did not include forum-specific advertisements.

[3] Wake Up argues that any actions of Deepfreeze and Carr related to publishing the video are imputable to Sony because they acted as Sony's agents. Doc. 54 at 13, n.6. Wake Up cites section 2(f) of the Recording Agreement and Amendment, Doc. 35-3, which states that Sony has the exclusive right to use Carr's existing recordings. Wake Up argues that this means that any use of Carr's music or the video should be imputed to Sony. Doc. 54 at 13, n.6. The Court finds that section 2(f), by itself, is insufficient to establish agency, as it does not contractually identify Deepfreeze as Sony's agent. Section 2(f) only establishes Sony's exclusive right to use Carr's recordings, and does not causally link Deepfreeze and Carr's actions to Sony's authority. Wake Up cites *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1073 (9th Cir. 2001), in which an employee's

1    Sony disputes the facts that Wake Up asserts in its claim of purposeful direction. Sony denies that it promoted or paid for Carr's performances at events in Arizona. Doc. 62 at 10. Joanne Madhere, Director of Product/Label Management at RED, a subsidiary of Sony, submitted a declaration with Sony's reply brief. Doc. 62-2. She clearly states:

> Sony, including its label, Louder than Life, and RED did not make any payments to any venue or promoter in Arizona for any of the events in Arizona listed in [Wake Up's] exhibits. . . . Rather, [her] understanding is that Deepfreeze Entertainment arranged for those events. Sony . . . did not make any payments to Deepfreeze Entertainment for the purpose of sponsoring any of those events. . . .

*Id.*, ¶ 4. Sony also denies that it demanded that YouTube remove the *Hell Yeah* video posted by Wake Up in August 2014. Madhere states that "to [her] knowledge Sony did not issue a take-down notice to YouTube or otherwise cause the music video to be removed or blocked." Doc. 35-1, ¶ 11.

Given this dispute of facts, the Court concludes that the parties should be permitted to conduct jurisdictional discovery related to purposeful direction before the Court makes a final decision on personal jurisdiction. The limited nature of that discovery is described at the end of this order.

### b.   Knowledge of Arizona Harm.

Wake Up must also make a prima facie showing that Sony knew it was causing harm likely to be suffered in Arizona. This "element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum" and can even be established if "the bulk of the harm occurs outside of the forum." *Brayton*, 606 F.3d at 1131.

/ / /

Wake Up alleges that it placed the *Hell Yeah* video on YouTube on August 9, 2014, and that Sony "caused YouTube to remove or block the video" the same day. Doc. 25, ¶¶ 62, 63. Wake Up argues that upon viewing the video and demanding that

---

actions were imputed to his employer, but section 2(f) does not establish an employment relationship.

1  Wake Up take it down, Sony "knew that its infringing conduct would damage Wake Up
2  in Arizona."  Doc. 54 at 14.  Alonzo Harris's declaration supports this argument.
3  Doc. 54-1, ¶ 17.  He states that he was contacted by Marshae Green, "on behalf of
4  Deepfreeze, who demanded that the [v]ideo be removed from the internet [because] Sony
5  discovered the [v]ideo and was demanding that it be taken down." *Id.*

6  Evidence that Sony took steps to get the video taken down, whether directly or
7  through Deepfreeze, would suggest that Sony was aware of, or should have been aware
8  of, a potential copyright dispute involving Arizona entities.  Harm to an Arizona entity
9  through Sony's copyright infringement would be foreseeable.  Because these facts are
10 also disputed, they too may be the subject of the jurisdictional discovery described at the
11 end of this order.[4]

### B.    Improper Venue.

The Ninth Circuit interprets 28 U.S.C. § 1400(a) "to allow venue in any judicial district where . . . the defendant would be subject to personal jurisdiction." *Brayton*, 606 F.3d at 1126.  Thus, if personal jurisdiction exists in Arizona, then venue for this copyright action does as well.  As this issue will turn on whether Sony is subject to personal jurisdiction here, and discovery is needed on that issue, it does not provide an independent basis for dismissal and the Court will deny Sony's venue motion.

### C.    Failure to State a Claim.

#### 1.    Legal Standard.

When analyzing a complaint for failure to state a claim for relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light

---

[4] Wake Up also alleges that it provided Sony with notice that it was infringing Wake Up's copyright. Doc. 25, ¶ 14. Wake Up alleges that Sony disregarded this notice and continued its infringing behavior. *Id.*, ¶ 15. It appears, however, that the notice was provided only one day before this lawsuit was filed. Given that Sony's alleged infringing activity began on September 21, 2014 when it published a version of the *Hell Yeah* video to publically available websites, Doc. 25, ¶ 64, the Court is not convinced that a letter sent to Sony one day before Wake Up filed suit in Arizona gave Sony sufficient notice that its activity was likely causing harm in Arizona.

1 most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. Of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### 2. Analysis.

#### a. Prima Facie Case of Copyright Infringement.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). A copyright registration is "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). In Exhibit A to its complaint, Wake Up provides its Certificate of Registration for the work "*Judge Da Boss Hell Yeah* (Video)." Doc. 25-1. Irin Daniels is listed as the author of the video, and the sole copyright claimant is Wake Up. *Id.* Wake Up alleges that "Sony intentionally uploaded and published Wake Up's copyrighted work to various online and worldwide websites available within the state of Arizona." Doc. 25, ¶ 10. Wake Up denies ever assigning or licensing any rights to the *Hell Yeah* music Video to Deepfreeze, Carr or Sony. *Id.*, ¶ 65. Wake Up has pled a prima facie case of copyright infringement.

#### b. Joint Work.

Sony does not address Wake Up's registration of its copyright. Instead, Sony alleges that the *Hell Yeah* music video was a joint work and therefore Sony's publishing of the video constitutes a valid use by a joint owner of a copyrighted work.[5] Doc. 35 at 12. The Copyright Act defines a joint work as a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The Ninth Circuit "requires each author to make an independently copyrightable contribution" to a joint work. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990). "Authorship is required under the statutory definition of a joint work [and] is not the same thing as making a valuable and copyrightable contribution." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232 (9th Cir. 2000).

The Ninth Circuit uses a three-factor test for determining joint authorship: (1) an author "superintends the work by exercising control;" (2) "putative coauthors [must] make objective manifestations of a shared intent to be coauthors;" and (3) "the audience appeal of the work must turn on both contributions" such that "the share of each in its success cannot be appraised." *Id.* at 1235; *see Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008). Taking Wake Up's well-pled factual allegations as true, the Court concludes that Wake Up has sufficiently alleged that Irin Daniels was the sole author of the *Hell Yeah* music video and that the video is not a joint work. Wake Up alleges that Daniels had "complete creative and supervisory control and authority" over the entire production of the video. Doc. 25, ¶¶ 32, 36. Wake Up also alleges that Carr did not contribute to or control "any aspect of the lighting, set design, choreography, wardrobe, and editing" of the video, and did not have "any directorial, creative, or editorial control in the production process." *Id.*, ¶ 39.[6]

---

[5] Authors of a joint work are co-owners of the copyright in the work, 17 U.S.C. § 201(a), and co-owners are not liable to each other for infringement of the copyright, *Oddo v. Ries,* 743 F.2d 630, 632-33 (9th Cir. 1984 ).

[6] Sony refers to Wake Up's allegations regarding Daniels' control over the video as conclusory. Doc. 35 at 21. Specifically, Sony argues that Wake Up has not alleged that Carr did not control his own performance. However, even if Carr did have complete control over his own performance, that would not by itself provide evidence of co-authorship. Authorship is different from "making a valuable and copyrightable

- 11 -

Furthermore, Wake Up alleges that none of the parties objectively manifested an intent for Carr to be treated as a co-author of the video. *Id.*, ¶¶ 28, 29, 39, 43, 44. Nor did he refer to himself as a co-author of the video, present himself as a co-author of the video, or act as the co-author of the video. These allegations are sufficient to establish, at the pleading stage, that Daniels and Carr did not objectively manifest their shared intent to be co-authors.[7]

Wake Up sufficiently alleges that the music video was not a joint work. Sony's arguments will be relevant at later stages of the litigation.

### c. License.

Sony argues that Wake Up provided Carr with a non-exclusive license to use the *Hell Yeah* video and that this is a complete defense to copyright infringement claims. Doc. 35 at 16-17. The Copyright Act states that the copyright owner of an "audiovisual work" has the "exclusive rights to copy, distribute or display the copyrighted work publically," and requires any transfer of ownership to be executed in a signed writing. *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 556 (9th Cir. 1990) (citing 17 U.S.C. §§ 106, 204). A narrow exception from § 204's writing requirement is provided for nonexclusive licenses. *Id.* at 558. "Generally, a 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement.'" *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999) (quoting *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998)).

"A non-exclusive license [may be] implied from conduct." *Effects*, 908 F.2d at 558 (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A], at 10–36 (1989)). "[A]n implied license is granted when '(1) a person (the licensee) requests the

---

contribution." *Aalmuhammed*, 202 F.3d at 1232.

[7] Sony presents a number of arguments that it claims show that Wake Up's intent was for Carr to be a co-author: (1) the music video was produced as a promotional tool for Carr, (2) the music video begins with "Judge" and *Hell Yeah*, and only references Daniels once, and (3) Carr was not paid to perform in the video. These arguments may prove relevant at the summary judgment stage, but at this stage the Court must take Wake Up's allegations as true.

- 12 -

1  creation of a work, (2) the creator (the licensor) makes that particular work and delivers it
2  to the licensee who requested it, and (3) the licensor intends that the licensee-requestor
3  copy and distribute his work.'" *Asset Marketing Sys., Inc. v. Gagnon*, 542 F.3d 748, 754-
4  55 (9th Cir. 2008) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)).  The
5  Court finds that Wake Up's pleadings are sufficient to demonstrate that it did not grant a
6  non-exclusive license to Carr to use and distribute the *Hell Yeah* music video.

7  To grant an implied license, the licensor must intend for the licensee to use the
8  license to copy and distribute his copyrighted material.  Wake Up alleges that it never
9  assigned or licensed any rights to the *Hell Yeah* music video to Carr, Deepfreeze or Sony.
10  Doc. 25, ¶ 65.  Sony counters that the video was produced in order to promote Carr's
11  music, that "the only reasonable inference" from the fact that Sony ended up with the
12  video is that it was delivered to Sony via Carr and/or Deepfreeze, and that this delivery
13  "is a strong objective manifestation of consent to its use."  Doc. 35 at 24.  But the Court
14  must accept Wake Up's allegations as true and draw reasonable inferences in its favor.
15  Sony is making factual arguments that are not relevant in assessing the sufficiency of
16  Wake Up's claim.  Wake Up has sufficiently pled that it did not license, expressly or
17  impliedly, Carr, Deepfreeze, or Sony to copy or distribute the *Hell Yeah* music video.

18  **III.  Deepfreeze and Carr's Motion to Dismiss.[8]**
19      **A.  Failure to State a Claim.**
20  Defendants Deepfreeze and Carr (collectively "Defendants") move to dismiss
21  Wake Up's claim of copyright infringement against Deepfreeze and its claim of Fraud
22  against Carr.  Doc. 51.  Defendants argue that Wake Up has "failed to prove that Carr and
23  Deepfreeze . . . were not in fact co-authors of the video," and that Wake Up "failed to

---

25  [8] Counsel for Wake Up is reminded to comply with LRCiv 7.1 regarding forms of
26  papers.  Specifically, counsel should review LRCiv 7.1(b)(1), which states that "[t]he body of all documents shall be typed double-spaced and shall not exceed 28 lines per page; they shall not be single-spaced except for footnotes and indented quotations."
27  Also, Wake Up argues that Deepfreeze and Carr's motion to dismiss is subject to being summarily denied for Deepfreeze and Carr's failure to confer with Wake Up prior to
28  filing the motion.  Doc. 59 at 2.  The Court will not impose such a sanction for one incident, but counsel for Defendants is reminded to comply with Court orders.

meet its burden to plead facts in support of the elements of fraud." Doc. 51 at 5.

### 1. Copyright Infringement.

As discussed above, Wake Up has established a prima facie case of copyright infringement. Defendants argue that (1) Carr maintained an ownership interest in the use and exploitation of his image, his musical composition, and his sound recordings and never assigned ownership of these interests to Wake Up, and (2) Carr and Deepfreeze "jointly participated in co-authorship and creative input in the production and making of the video produced by Irin Daniels." *Id.* at 2, 3.

Defendants' first argument fails to rebut Wake Up's prima facie case of copyright ownership. Wake Up's allegations concerning the filming of the music video suggest that Carr willingly participated in the filming and never made any objections to the use of his image or his composition. Doc. 25, ¶¶ 20-44. Lawful use of Carr's image and his musical composition is a factual dispute. At the pleading stage, the Court is required to construe allegations in the light most favorable to the non-moving party. *Cousins*, 568 F.3d at 1067. The Court thus finds that Wake Up's pleadings regarding Carr's participation in the music video are sufficient to survive Defendants' argument.

Defendants' second argument is that Carr and Deepfreeze are co-authors of the *Hell Yeah* music video. The Court rejects this argument at the pleading stage for reasons discussed above.

### 2. Fraud Claims.

Defendants argue that Wake Up has failed to plead its fraud claims against Carr with the particularity required under Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Under this rule, Wake Up must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Dist. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Such detail allows Carr to "prepare an adequate answer from the allegations." *Id.* at 1400.

1  Wake Up's complaint includes sufficient detail. *See* Doc. 25. Wake Up describes
2  the content of Carr's alleged fraudulent misrepresentations and the identities of the
3  relevant parties:

> Carr represented to Harris that Carr owned the rights to the musical beat in the Hell Yeah composition and that he was free to sign with Wake Up as an exclusive recording artist and composer. . . . Despite his representation to Harris, Carr had already signed an exclusive recording agreement with Sony that included the use of the Hell Yeah composition. . . . Carr knew that his representation was [false]. . . . Carr intended to use his false representation to induce Harris to fund and produce the Hell Yeah Video so that he could provide it so Sony.

9  *Id.*, ¶¶ 81, 82, 84, 85. Although Wake Up does not include specific dates for each
10 communication (*id.*, ¶¶ 20, 22, 25, 27, 28, 30), the alleged statements fall between
11 October 2013, the month that Carr allegedly recorded the *Hell Yeah* composition, and
12 December 9, 2013, the date that Harris allegedly formed Wake Up (*id.*, ¶¶ 18, 31). These
13 allegations sufficiently identify the alleged fraud for Carr to respond.
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

**IT IS ORDERED:**

1. Defendant Sony's motion to dismiss for lack of personal jurisdiction and improper venue (Doc. 35) is **denied**.
2. Defendants Deepfreeze and Carr's motion to dismiss (Doc. 51) is **denied**.
3. The parties may conduct jurisdictional discovery between now and October 2, 2015. Each side will be allowed three depositions, not to exceed three hours each, and ten Rule 34 document requests, including subparts.[9] On October 9, 2015, the parties shall file simultaneous 10-page memoranda addressing personal jurisdiction over Sony in light of the jurisdictional discovery.

Dated this 13th day of August, 2015.

_____
David G. Campbell
United States District Judge

---

[9] The parties shall serve their jurisdictional Rule 34 requests within 10 days of this order, and responsive documents shall be produced within 20 days of service. The depositions and Rule 34 requests shall not count against the limits in the Court's Case Management Order (Doc. 50).