**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wake Up and Ball LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Sony Music Entertainment Incorporated, et al.,<br><br>　　　　　　Defendants. | No. CV-14-02403-PHX-DGC<br><br>**ORDER** |

On August 13, 2015, the Court considered Defendant Sony Music Entertainment's motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. Doc. 65; 2015 WL 4763657. The Court ordered the parties to conduct jurisdictional discovery and thereafter to prepare simultaneous 10-page memoranda on the question of the Court's jurisdiction over Defendant. Doc. 65 at 16. The parties have completed this discovery and filed their memoranda. Docs. 107, 108. The Court has reviewed these memoranda and the related exhibits, and no party has requested oral argument. The Court concludes that Defendant is properly subject to personal jurisdiction in the District of Arizona, and will deny Defendant's motion to dismiss for lack of personal jurisdiction and improper venue.

**I.   Background.**

Plaintiff Wake Up and Ball, LLC ("Wake Up") is an Arizona limited liability company with its principal place of business in Arizona. Doc. 25, ¶ 1. In early 2014, Plaintiff produced a music video for *Hell Yeah*, a recording by Arizona hip hop artist

Robert Carr (a.k.a. "Judge da Boss").  *Id.* ¶¶ 20-25, 50.  In April 2014, Mr. Carr signed a contract with Defendant, pursuant to which Defendant acquired an ownership interest in the *Hell Yeah* recording.  *See* Doc. 107-1, Ex. 4.  In September 2014, Defendant signed a contract with Mr. Carr's management company, Deepfreeze Entertainment, LLC ("Deepfreeze"), which purported to transfer to Defendant the copyright to the *Hell Yeah* video.  *Id.* at Ex. 29.  Later that month, Defendant published the video on several websites and online services, including MTV and iTunes.  Doc. 25, ¶ 64.  Around the same time, Plaintiff posted the video on YouTube.  *Id.* at ¶ 62.  Plaintiff alleges that Defendant took steps to have Plaintiff's posting removed.  *Id.* at ¶ 63.

In October 2014, Plaintiff filed this action, seeking, among other things, relief for copyright infringement from Defendant and a declaratory judgment as to its copyright ownership.  Doc. 1.  Defendant filed a motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim.  Doc. 35.

On August 13, 2015, the Court invited discovery on two factual disputes going to Court's jurisdiction over Defendant.  The first question asked whether Defendant's intentional act in publishing the *Hell Yeah* video was expressly aimed at Arizona.  The Court explained:

> Wake Up must make a prima facie showing that Sony expressly aimed the publishing of the music video at Arizona.  This requires "'something more' than mere foreseeability." . . . Standing alone, the fact that Sony negotiated with an Arizona company regarding an Arizona-based artist would not be enough to establish express aiming at Arizona under post-*Walden* minimum contacts analysis.  Nor would the fact that Sony placed the *Hell Yeah* video on publically available websites accessible in Arizona be sufficient.  But if Sony promoted a *Hell Yeah* music video release party in Arizona at which Wake Up's music video was shown, Sony expressly aimed its copyright infringement at Arizona.  Moreover, promotion of live performances in Arizona would tend to show the "something more" required for express aiming under the *Calder* effects test . . .

Doc. 65 at 7 (citations and footnotes omitted).

The second question asked whether Defendant's intentional act in publishing the *Hell Yeah* video caused harm that Defendant knew would likely be suffered in Arizona.  The Court explained that this element would be satisfied if Defendant's intentional act

- 2 -

had foreseeable effects in Arizona, whether or not the bulk of the harm occurred there. *Id.* at 8 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)). The Court further explained:

> Evidence that Sony took steps to get the video taken down, whether directly or through Deepfreeze, would suggest that Sony was aware of, or should have been aware of, a potential copyright dispute involving Arizona entities. Harm to an Arizona entity through Sony's copyright infringement would be foreseeable.

*Id.* at 9.

## II. Analysis.

### 1. Legal Standard.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Arizona has authorized its courts to exercise jurisdiction to the maximum extent permitted by the Due Process Clause of the U.S. Constitution. *See* Ariz. R. Civ. P. 4.2(a). Under the Due Process Clause, a federal district court may exercise jurisdiction over a non-resident defendant if the defendant has "minimum contacts" with the forum, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant has sufficient minimum contacts with the forum to support an exercise of jurisdiction if (1) the defendant purposefully avails herself of the privileges of conducting activities in the forum or purposely directs conduct at the forum that has effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011).

In copyright infringement cases, the inquiry under the first prong of the "minimum contacts" test is whether the defendant purposefully directed his activities at the forum state. *Id.* at 1228. Under this framework, sometimes referred to as the *Calder* effects test, a plaintiff must show that the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) which caused harm that the defendant knew

was likely to be suffered in that state. *Id.* If the plaintiff makes such a showing, the second prong of the minimum contacts test asks whether the plaintiff's claim arises out of or relates to conduct which was directed at the forum state. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unreasonable – i.e., incompatible with fair play and substantial justice. *Mavrix*, 647 F.3d at 1228. If the defendant does not make such a showing, the Court may exercise jurisdiction over the defendant. *Id.*

### 2. Express Aiming.

Plaintiff must make a prima facie showing that Defendant expressly aimed the publishing of the *Hell Yeah* video at Arizona. To establish express aiming, a plaintiff must show that the non-resident defendant's action is related to the forum by "something more" than a foreseeable effect. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2002). In determining whether there is "something more," the Ninth Circuit considers a number of factors, including "the geographic scope of the defendant's commercial ambitions." *Mavrix*, 647 F.3d at 1229. In a copyright infringement case, a defendant will be found to have done "something more" where it used copyrighted material "as part of its exploitation of [the forum state's] market." *Id.*

In the August 13 order, the Court explained that Defendant's "promotion of [Mr. Carr's] live performances in Arizona would tend to show the 'something more' required for express aiming." Doc. 65 at 7. Whether Defendant promoted such performances was the first question the Court ordered the parties to address. *Id.* at 7-8.

Evidence obtained in discovery indicates that Defendant did promote Mr. Carr's live performances in Arizona. *See* Doc. 107-1, Ex. 8, at 16-18 (deposition of Defendant's employee Kimberly Lumpkin, acknowledging that Defendant directed a contractor to hire a street team for Mr. Carr's performance in Phoenix); Doc. 107-2, Ex. 20 (email from RED Distribution, LLC ("RED") employee Gazelle Alexander,[1] stating that she enlisted

---

[1] RED is a wholly-owned subsidiary of Defendant. Doc. 108-4 at 2.

- 4 -

1  Mr. Carr's friends to pass out promotional materials at same event); Ex. 15 (email from
2  RED employee Joanne Madhere, stating that RED would send 1,000 promotional CDs to
3  promote the same event).[2]

4  This evidence indicates that, around the time it published the *Hell Yeah* video,
5  Defendant was engaged in a commercial campaign directed, in part, at exploiting the
6  Arizona market. The Court therefore concludes that Defendant expressly aimed this
7  publication at Arizona.[3] *Cf. Mavrix*, 647 F.3d at 1229.

### 3. Knowledge of Arizona Harm.

Plaintiff must also make a prima facie showing that Defendant knew it was causing harm likely to be suffered in Arizona when it published the *Hell Yeah* video. This "element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum" and can be established even if "the bulk of the harm occurs outside of the forum." *Brayton*, 606 F.3d at 1131. A defendant's intentional act has foreseeable effects in a forum if it causes foreseeable economic loss to a corporation with its principal place of business in that forum. *CollegeSource*, 653 F.3d at 1079.

As explained in the August 13 order, Defendant's copyright infringement was foreseeable if Defendant knew or should have known of a potential copyright dispute involving Arizona entities. Doc. 65 at 9. Evidence that Defendant took steps to have Plaintiff's video posting removed would demonstrate such knowledge. *Id.* Whether Defendant was or should have been aware of a potential copyright dispute involving

---

[2] The discovery indicates that Defendant engaged in other promotional activity in Arizona. One RED employee visited Phoenix to "talk to all the Major DJ's [sic] in the city" about playing Mr. Carr's music. Doc. 107-2, Ex. 20. Another RED employee scheduled a dinner with Mr. Carr and the music director of a Phoenix radio station. Doc. 108-4 at 2.

[3] The Court also concludes that Defendant expressly aimed the publication of the *Hell Yeah* video at Arizona by directing Mr. Carr to promote it on his Twitter account. *See* Doc. 107-2, Ex. 37 at 2. At the time it directed Mr. Carr to make this posting, Defendant was aware that 11 percent of Mr. Carr's Twitter followers were Arizona residents. *Id.* at 3. Defendant's use of this medium supports a finding that it expressly aimed the video at Arizona. *Cf. Mavrix*, 647 F.3d at 1230 (the fact that a "substantial number of hits on [defendant's] website came from California residents" supported inference that defendant was expressly aiming the website at California).

Arizona entities was the second question the Court ordered the parties to address in jurisdictional discovery. *Id.*

Although discovery does not support Plaintiff's assertion that that Defendant took steps to have Plaintiff's video posting removed, it does indicate that Defendant knew or should have known of a potential copyright dispute involving Arizona entities. Specifically, Defendant knew that the *Hell Yeah* video originally included third-party logos and trademarks. Doc. 108-5 at 3-4. Defendant asked Deepfreeze to remove these logos and trademarks, *id.*, but did not take additional steps to confirm that the third party's legal rights were terminated. Further, a few weeks before Defendant published the video, one of its employees received an email from Deepfreeze indicating that Wake Up was entitled to, but had not yet received, payment for the *Hell Yeah* video. Doc. 107-2, Ex. 30. Defendant knew or should have known that there was a potential copyright dispute between Deepfreeze and Wake Up at the time it published the *Hell Yeah* video. The Court therefore concludes that it was foreseeable that publication of this video would cause harm in Arizona.

### 4. Causation.

Finally, Plaintiff must make a prima facie showing that its claim arises out of or relates to Defendant's forum related conduct – that is, the conduct that Defendant purposefully directed at Arizona. The Court has already determined that Defendant purposely directed the publication of the *Hell Yeah* video at Arizona. Plaintiff's claim arises out of this publication. Therefore, Plaintiff's claim arises out of or relates to Defendant's Arizona related conduct. *Compare Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1146 (N.D. Cal. 2007) (plaintiff satisfied causation requirement by demonstrating that defendant's alleged copyright infringement "reached into this district and allegedly affected plaintiffs in this district").

Defendant argues that Plaintiff's copyright infringement claim does not arise out of Defendant's Arizona related conduct because the claim would have arisen even if the allegedly infringing video had not been accessible in Arizona. Doc. 108 at 9. This

argument proves too much. Because Defendant disseminated the video nationwide, there is no state for which it is true that Plaintiff's claim would not have arisen but for dissemination of the video in that state.

More to the point, Defendant's argument is incompatible with precedent. In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Supreme Court held that New Hampshire could exercise jurisdiction over a magazine that disseminated allegedly libelous material within its borders, notwithstanding the fact that the material had also been distributed in other states. This forecloses the argument that a plaintiff in a publication tort case must show that dissemination of the tortious publication in the forum state was a necessary predicate to her claim. It is sufficient to show that the tortious publication which gave rise to the claim was directed *in part* at the forum state. Plaintiff has made such a showing here.

### 5. Reasonableness.

Because Plaintiff has satisfied the first two prongs of the "minimum contacts" test, the burden now shifts to Defendant to "present a compelling case" that exercise of jurisdiction in this case would be unreasonable. *CollegeSource*, 653 F.3d at 1079 (citation omitted). Defendant has not borne its burden. Defendant reiterates its unsuccessful argument that its contacts with Arizona were "attenuated and limited." Doc. 108 at 14. But it does not suggest that litigating this matter in Arizona would be unduly burdensome or prejudicial. The Court therefore concludes that exercise of jurisdiction in this case is consistent with fair play and substantial justice.

**It is ORDERED** that Defendant's motion to dismiss for lack of personal jurisdiction and improper venue (Doc. 35) is **denied**.

Dated this 2nd day of November, 2015.

_____
David G. Campbell
United States District Judge